USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/25/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MILICA J. STETS,

        **Plaintiff,**

-against-

SECURIAN LIFE INS. CO., BLOOMBERG L.P., JOHN STETS, MARY-ANNE STETS, *individually and as Attorney-in-Fact for Daniel J. Stets, Deceased,*

        **Defendants.**

---

1:17-cv-09366 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiff Milica J. Stets brings this action against Defendants Securian Life Ins. Co. ("Securian"), Bloomberg L.P. ("Bloomberg"), John Stets and Mary-Anne Stets (collectively, the "Defendants"), alleging she is entitled to benefits under her late husband's, non-party Daniel Stets, life insurance plan and that Bloomberg failed to provide her with information about said plan. Amend. Compl., ECF No. 12. Specifically, Plaintiff's complaint includes the following causes of actions: 1) recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); 2) failure to supply requested information pursuant to 29 U.S.C. § 1132(a)(1)(A); 3) declaratory judgment concerning the power of attorney executed by the decedent; 4) declaratory judgment concerning beneficiary designations executed by Defendant Mary-Anne; 5) unjust enrichment; and 6) attorney's fees and costs pursuant to 28 U.S.C. § 1132(g). Before the Court are Defendants Securian's and Bloomberg's (collectively, the "Entity Defendants") motion for summary judgment, Defendants John Stets's and Mary-Anne Stets's (collectively, the "Individual Defendants") motion for partial summary judgment, and Plaintiff's motion for partial summary judgment. For the reasons stated below, the Entity Defendants' motion for summary judgment is

1

**GRANTED**; the Individual Defendants' partial motion for summary judgment is **GRANTED;** and Plaintiff's motion for partial summary judgment is **DENIED**.

## BACKGROUND

In 1993, Plaintiff Milica Stets married non-party decedent, Daniel J. Stets in Berlin, Germany. Pls.' Resp. Ind. Defs.' R. 56.1 Stmt. ¶ 1, ECF No. 90. The couple had one son during their marriage, Defendant John Stets. *Id.* ¶ 2. Daniel's sister is Defendant Mary-Anne Stets. Prior to his death, Daniel was an employee of Defendant Bloomberg and a participant in its life insurance benefit plan. Pl.'s R. 56.1 Smt. ¶ 9, EC No. 80. The benefits of said plan were insured through group policies issued by Defendant Securian, who used beneficiary information provided by Bloomberg to pay plan benefits upon an insured's death. Ent. Defs.' R. 56.1 Stmt. ¶ 2, 6, ECF No. 66; Warshaw Decl., Exs. B, C, ECF No. 67.

Daniel's life insurance plan was governed by the "The Bloomberg L.P. Plan document and Summary Plan Description" ("Plan Document") and the "Employee Group Term Life – Certificate of Insurance" ("Certificate of Insurance"). Ent. Defs.' R. 56.1 Smt. ¶ 3; Warshaw Decl. Exs. A, B. Pursuant to the Plan Document, Bloomberg was

> responsible for the operation and administration of the Plan. It ha[d] full discretion and authority to make all decisions in connection with the administration of the Plan, including but not limited to decisions concerning: eligibility to participate; benefits to which any participant or beneficiary is entitled; selecting a Claims Administrator to serve as claims fiduciary; and Plan interpretation and determination of any fact under the Plan.

Warshaw Decl., Ex. B. at 32. These responsibilities included maintaining life insurance beneficiary designations. Ent. Defs.' R. 56.1 Stmt. ¶ 5. In addition, under the life insurance plan, participants could make beneficiary changes at any time through Bloomberg's benefits website, Bloomberg Professional ®. Warshaw Decl., Ex. B. at 69–70. Specifically, the Plan Document provides:

> You may name anyone you wish as your beneficiary and you may change your beneficiary at any time. . . . Beneficiary designations and changes in your beneficiary designation must be made by logging onto ENRL<GO>, on your Bloomberg Professional ®. Beneficiary designations and changes in beneficiary designations will become effective on the date they are entered into ENRL<Go>, but will not affect any payment the Insurance Company makes or action it takes prior to receiving the designation.

*Id.* Further, the Certificate of Insurance states "[a] request to add or change a beneficiary must be made in writing. A change will take effect as of the date it is signed, but will not affect any payment we make or action we take before receiving [a participant's] notice." Warshaw Decl., Ex. A at 10.

Daniel first enrolled in a Bloomberg's life insurance plan on August 17, 1998; this plan insured him for $200,000 in basic benefits. Ent. Defs.' R. 56.1 Smt. ¶ 13; Warshaw Decl., Ex. E. On August 20, 2007, Daniel later enrolled in supplemental benefits, which insured him for an additional $245,000. Ent. Defs.' R. 56.1 Smt. ¶ 13; Warshaw Decl., Ex. E. Prior to October 31, 2016, Daniel had designated Milica and their son John as beneficiaries, with benefits of 75% and 25%, respectively. Ent. Defs.' R. 56.1 Smt. ¶ 14.

On February 26, 2014, Milica initiated divorce proceedings against Daniel in the New York State Supreme Court. Ent. Defs.' R. 56.1 Stmt. ¶ 15, ECF No. 87. Pursuant to the divorce action, the New York State Supreme Court issued automatic orders that state "[n]either party shall change the beneficiaries of any existing life insurance policies, and each party shall maintain the existing life insurance . . . in full force and effect." Ind. Defs.' R. 56.1 Stmt. ¶ 13, ECF No. 69. At the time of Daniel's death, the New York State Supreme Court had not entered a final judgment resolving the divorce action. Ind. Defs.' R. 56.1 Stmt. ¶ 11.

On October 2, 2014, Daniel executed a power of attorney, appointing his sister, Mary-Anne Stets as attorney-in-fact. Ind. Defs.' R. 56.1 Stmt. ¶ 23; Warshaw Decl., Ex 6, Ex H at 12:8,13:7. Daniel did not execute a Statutory Gifts Rider in connection to the appointment at any

3

time. Pl.'s R. 56.1 Stmt. ¶ 5. Mary-Anne ultimately signed the power of attorney on February 23, 2016, which is the date it became effective. Ent. Defs.' R. 56.1 Smt. ¶18.

Early in October of 2016, Daniel suffered a stroke. Ind. Defs.' R. 56.1 Stmt. ¶ 24. Shortly thereafter, on October 26, 2016, Bloomberg's administrator for 401(k) benefits, Empower, submitted the power of attorney to Bloomberg for review. Ent. Defs.' R. 56.1 Stmt. ¶ 20. In part, the purpose of the review was for Bloomberg to determine whether restrictions on the attorney-in-fact applied to the management of Daniel's 401(k) benefits. *Id.* ¶ 21. On October 31, 2016, in a conversation between Bloomberg's representative Keith McMurdy and Mary-Anne's attorney Scott Lavin, Mr. Lavin advised Mr. McMurdy that Mary-Anne would like to change the beneficiary designations on Daniel's life insurance to 100% for his son, John. Ent. Defs.' R. 56.1 Stmt. ¶ 23–24. That same day, Mr. McMurdy sent Mr. Lavin an email to confirm the change, indicating that Bloomberg "ha[d] changed the beneficiary designations on Mr. Stets' life insurance coverage to reflect his son as the 100% beneficiary" and that the "change is effective as of 10/31/16". Warshaw Decl., Ex. I. at 49. Mr. McMurdy specifically asked to "notify [him] immediately" should the designation change be "incorrect or contrary to [Mary-Anne's] wishes." Warshaw Decl., Ex. I. at 49. Approximately ten minutes later, Mr. Lavin replied that the designation change was "consistent with [his] client's wishes." *Id.* Mr. McMurdy subsequently directed Blomberg's Benefits Department to change the life insurance beneficiary percentages. Ent. Defs.' R. 56.1 Stmt. ¶ 26.

In addition, prior to the beneficiary designation change, Mary-Anne had been in contact with Bloomberg for several weeks concerning various issues related to Daniel's health and employment. Ent. Defs.' R 56.1 Smt. ¶ 27. As a result of these ongoing conversations, Bloomberg personnel viewed Mary-Anne as acting for Daniel. Ent. Defs.' R. 56.1 Smt. ¶ 28.

Unfortunately, on November 7, 2016, Daniel passed away. Ind. Defs.' R. 56.1 Stmt. ¶ 26. Shortly thereafter, Bloomberg informed Securian that John was the beneficiary of Daniel's life insurance plan and as a result, Securian paid the basic and supplemental life insurance benefits to John. Ent. Defs.' R. 56.1 Stmt. ¶ 30.

Around the same time, Milica contacted Bloomberg to solicit information about Daniel's life insurance plan. She then followed up with Bloomberg via email on October 26, 2016. In relevant part, Milica's email states "I would appreciate it if Bloomberg could help me regarding the benefits and some basic information, in case Dan passes away, and the name of the person I can contact, since I now reside outside of NYC." Messina Decl. Ex. H., ECF No. 86. In response, a Bloomberg employee stated "[t]there is not much information I can provide to you, however, you are covered by his medical insurance. Is there something else I can answer for you." *Id.*

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the admissible evidence—including affidavits, deposition transcripts, or other documentation—in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.,* 315 F.3d 171, 175 (2d Cir. 2003).

Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York,* 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [the non-moving party's] position will be insufficient; there must be evidence on which the jury could *reasonably* find for the [the non-moving party's]." *Id.* (quoting *Anderson,* 477 U.S. at 252).

## DISCUSSION

### I. Beneficiary Designation Change

Where, as here, an employee benefit plan grants a plan administrator discretionary authority to construe the terms of the plan, a district court must deferentially review a denial of benefits challenged under ERISA. *Firestone Tire & Rubber Co. v. Bitch*, 489 U.S. 101, 115, (1989). The court may reverse the denial only if the administrator's decision was arbitrary and capricious, that is, "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Zervos v. Verizon New York Inc.*, 277 F.3d 635, 646 (2d Cir. 2002) (citations omitted); *see also Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 145–46 (2d Cir. 2003) (citations omitted) ("Under the arbitrary and capricious standard, the scope of judicial review is narrow.") Specifically, substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] . . . requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotation marks omitted, alteration in the original). In addition, an administrator's decision to deny benefits must be "based on a consideration of the relevant factors." *Id.* at 1072 (citation omitted). "[W]here the [administrators] of a plan . . . interpret the plan in a manner inconsistent with its plain words, or by their interpretation render

some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 481 (S.D.N.Y. 2015) (citing *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995)).

In this case, Milica argues that Bloomberg made numerous decisions that were arbitrary and capricious. Milica generally asserts it was arbitrary and capricious for Bloomberg: 1) to accept Mary-Anne's authority to make beneficiary designation changes; 2) to fail to adhere to the plan's requirements concerning beneficiary designation changes; and 3) to make beneficiary designation changes in light of the automatic restraining orders issued pursuant to Daniel's and Milica's divorce proceeding. The Court will address each argument in turn.

As a preliminary matter, the Court finds that the ERISA preemption provision applies. In general, ERISA preempts state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a); *see also Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 440 (2d Cir. 2002). The Second Circuit has held that "[s]tate laws governing the designation of plan beneficiaries . . . 'relate to' employee benefits plans and thus are subject to ERISA preemption." *Metro. Life*, 283 F.3d at 44 (citations omitted); *see also McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (internal quotation marks and citations omitted) ("ERISA provides for the wholesale displacement of certain state-law claims. Pursuant to ERISA § 502(a)(1)(B), a participant or beneficiary may bring an action . . . to clarify his rights to future benefits under the terms of the plan. This civil enforcement scheme completely preempts any state-law cause of action that duplicates, supplements, or supplants an ERISA remedy."). Although Milica has not argued that any of the ERISA preemption exceptions applies, the Court finds that none, including 29 U.S.C. § 1144(b)(7), are applicable. *See e.g.*, *Fort Dearborn Life Ins. Co. v. Uebler-Otoka*, No. 07CV771C, 2010 WL 11549445, at *2–3 (W.D.N.Y. Oct. 13, 2010) (concluding that an

automatic order in a divorce action where a party died prior to the entry of a final judgment of divorce did not constitute a qualified domestic relations order because it became moot upon the decedent's death).

The Court must next consider whether Mary-Anne had the authority to make beneficiary designation changes. As indicated above, on February 26, 2016, Mary-Anne was appointed power of attorney for Daniel. Following Daniel's stroke, for several weeks, Mary-Anne communicated with Bloomberg regarding issues related to Daniel's health and employment. Considering both the power of attorney and Mary-Anne's communications with Bloomberg starting in October of 2016, Bloomberg believed Mary-Anne was acting for Daniel. This belief was not inconsistent with the life insurance plan, which does not appear to prohibit agents from acting on behalf of participants. Further, in light of ERISA preemption, Milica's argument that Daniel did not execute a Statutory Gifts Rider to his power of attorney appointment of Mary-Anne is unavailing. The plan did not require an execution of a power of attorney in order for an agent to act on behalf of a participant. In fact, the plan does not specifically address whether agents could make designation changes on behalf of participants. Considering Daniel's health at the time Mary-Anne requested the designation change, her constant communication with Bloomberg, and the fact that Daniel had entrusted her to act on his behalf more generally, the Court cannot conclude Bloomberg's acceptance of Mary-Anne's authority was unsupported by substantial evidence.[1]

Now that the Court has determined that Bloomberg was not arbitrary and capricious in accepting Mary-Anne's authority, the Court must consider whether Mary-Anne's designation change adhered to the plan's requirements. ERISA plan documents "must be interpreted

---

[1] For the same reasons, Plaintiff's third cause of action, seeking a declaratory judgment that the beneficiary designation are null and void based on Mary-Anne's lack of authority is dismissed.

according to ordinary principles of contract law." *Latronica v. Local 1430 Int'l Bhd. of Elec. Workers Pension Fund*, No. 17-CV-00550 (NSR), 2019 WL 3997989, at *11 (S.D.N.Y. Aug. 23, 2019) (quoting *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018)). Accordingly, the Court must first determine whether the language of the Plan Document and Certificate of Insurance is ambiguous such that "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citation omitted). "[W]here both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.'" *Celardo*, 318 F.3d at 146 (quoting *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir.1983)).

Here, the Plan Document indicates that a participant "may change [their] beneficiary at any time" and that he or she must do so online through Bloomberg's benefits website. Warshaw Decl., Ex. B. at 69–70. In addition, the Certificate of Insurance requires that "[a] request to add or change a beneficiary must be made in writing" and that any changes "will take effect as of the date it is signed." Warshaw Decl., Ex. A at 10. Milica argues that while the Certificate of Insurance does not require a "wet" signature, a signature, including in electronic form, is nevertheless required to change a beneficiary. In response, the Entity Defendants argue that in light of the fact that beneficiary designations could be easily and frequently changed online, the Certificate of Insurance does not require a signed request to effectuate designation changes. Reading the Certificate of Insurance and Plan Document together, the Court finds the plan's language concerning beneficiary changes is capable of being interpreted in both of the ways the

9

parties suggest. The strictest reading of both documents would require an electronic signature. However, because the Plan Document explicitly allows for online designation changes without specifying whether Bloomberg's benefits website allows participants to make electronic signature, a reasonable person reading the plan documents may determine that a participant can either make designation changes in a signed writing or online. The plan's language is therefore ambiguous, and the Court must resolve this ambiguity by adopting Bloomberg's interpretation that a signature was not required. *See Celardo*, 318 F.3d at 146.

Because the beneficiary changes were not made through Bloomberg's benefits website, the Court must consider whether the method employed to change the beneficiaries substantially complied with the requirements of Daniel's life insurance plan. "When ERISA preempts a state law but is itself silent on the relevant issue, federal courts create a federal common law of rights and obligations under ERISA regulated plans." *Connecticut Gen. Life Ins. Co. v. Mitchell*, No. 94 CIV. 04648, 1995 WL 469714, at *7 (S.D.N.Y. Aug. 8, 1995) (citations omitted); *see also Am. Int'l Life Assur. Co. of New York v. Vazquez*, No. 02 CIV. 141, 2003 WL 548738, at *5–6. (S.D.N.Y. Feb. 25, 2003). In particular, "where the insured wanted to change the named beneficiary but failed to strictly comply with the ERISA plan, courts have adopted from common law the doctrine of substantial compliance to give effect to the insured's intent." *Am. Int'l Life Assur.*, 2003 WL 548738, at *5–6 (citations omitted). Courts in this District specifically consider whether the insured "(1) evidence[d] his or her intent to make the change and (2) attempt[ed] to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Id.* (quoting *Phoenix Mutual Life Insurance Co. v. Adams,* 30 F.3d 554, 564 (4th Cir. 1994)).

As indicated above, on October 31, 2016, Bloomberg's representative, Mr. McMurdy and Mary-Anne's attorney, Mr. Lavin, had a conversation about changing the beneficiary designation to 100% John. Following this conversation, in email correspondence, Mr. McMurdy indicated that the beneficiary designation had been changed and asked Mr. Lavin to confirm that the aforementioned change was consistent with Mary-Anne's wishes. Mr. Lavin promptly responded via email that the aforementioned change was consistent with Mary-Anne's wishes. The court finds that the beneficiary change substantially complied with the requirements under the plan. Specifically, the first prong is satisfied by Mary-Anne's attorney's verbal and written communication on October 31, 2019, requesting the change to beneficiary designations. Although the plan required logging onto Bloomberg Professional ® and making a written request, Mr. Lavin's email confirmation of the designation change on October 31, 2019 satisfies the second prong because it was in writing. Therefore, it was not arbitrary and capricious for Bloomberg to determine that beneficiary change request adhered to the plan's requirements.

Lastly, it was not arbitrary and capricious for Bloomberg to make the beneficiary changes despite the existence of automatic restraining orders from Daniel's and Milica's divorce proceeding. The Supreme Court of New York, Appellate Division's holding in *First Metlife Inv'rs Ins. Co. v. Filippino*, is instructive. 170 A.D.3d 672 (N.Y. App. Div. 2019). In that case, the decedent was party to a divorce action and subject to automatic orders, prohibiting him from making any beneficiary designation changes. *Id.* at *673. In contravention of the automatic orders, the decedent nevertheless changed his beneficiary designations from his wife to his son. *Id.* The decedent's wife and son both asserted claims to the life insurance benefits and consequently, the plan administrator filed an interpleader action. *Id.* The New York Appellate Division held "[t]he decedent's death, which occurred during the pretrial/discovery phase of the

11

divorce action, abated that action, divesting the court of jurisdiction to, in effect, enforce the 'automatic orders' set forth in Domestic Relations Law § 236 (B) (2) (b) and restore the original beneficiary designation." *First Metlife*, 170 A.D.3d at 674 (citations omitted).

Milica argues that in light of the holding in *Reliastar Life Ins. Co. of New York v. Cristando*, the Court may enforce the automatic orders. 129 A.D.3d 701, *702 (N.Y. App. Div. 2015). In *Reliastar*, the decedent, who was subjected to automatic orders, had changed his beneficiary designations before the trial in his divorce action. After the divorce had been granted but before the entry of the judgment of divorce, the decedent passed away. The New York Appellate Division held that the life insurance company was properly directed to pay the original beneficiary the benefits under the plan because "by changing the primary beneficiary of her life insurance policy . . . while the divorce action was still pending, the decedent violated the automatic orders." *Reliastar*, 129 A.D.3d at 702 (citations omitted). While the Appellate Division's holding did not explicitly rely on the fact that the divorce had been granted, the Court finds that this fact distinguishes *Reliastar* from the case currently before the Court; therefore the holding in *First Metlife* is more applicable. Furthermore, the fact that the divorce had been granted was a crucial fact in *Cristando v. Lozada*, a case listed as prior history of *Reliastar*. 118 A.D.3d 846, 847 (2014) (internal quotation marks and citations omitted) ("[t]he action did not abate upon the death of the wife, since the court had made the final adjudication of divorce before the wife's death, but had not performed the mere ministerial act of entering the final judgment."). Consistent with *First Metlife*, the Court finds that upon Daniel's death, the divorce proceeding between he and Milica abated and therefore enforcement of the automatic order is moot. *First Metlife*, 170 A.D.3d at 674; *see also Fort Dearborn Life Ins. Co.*, 2010 WL

12

11549445, at *2–3. Accordingly, it was not arbitrary and capricious for Bloomberg to permit the beneficiary changes despite the automatic orders.[2] Hence, the first cause of action is dismissed.[3]

## II. Failure to Supply Information

Pursuant to ERISA Section 502(c)(1), codified as 29 U.S.C. § 1132(c)(1)(B), a life insurance plan participant or beneficiary may bring a civil action for failure to supply requested information. *See Brown v. Rawlings Fin. Serv., LLC*, 868 F.3d 126, 128 (2d Cir. 2017). In particular, 29 U.S.C. § 1132(c)(1)(B) provides:

> [a]ny administrator . . .who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

*Id; see also* 29 U.S.C. § 1024(b)(4) (identifying the documents that administrators are required to provide plan participants or beneficiaries upon written request). If a court finds that a plan administrator failed to provide requested information, the court in its discretion may award damages. *See Brown*, 868 F.3d at 129 (citing 29 U.S.C. 1132(c)(1)). Specifically, courts may consider "(1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary." *McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 320 F.3d 151, 163 (2d Cir. 2003) (quoting *Austin v. Ford,* No. 95 Civ. 3730, 1998 WL 88744, at *6 (S.D.N.Y. Mar.2, 1998)).

As a preliminary matter, this claim is **DENIED** as to Securian because it was not the plan administrator. In addition, the Court finds that Milica did not make a sufficiently specific request

---

[2] For the same reasons, the fourth cause of action, seeking a declaratory judgment that the beneficiary designation are null and void based on the automatic orders is dismissed.
[3] Because the Court has dismissed the first cause of action, the fifth cause of action must also be dismissed.

13

for information to warrant the award of damages. In fact, Milica's email to Bloomberg on October 26, 2016 simply stated "I would appreciate it if Bloomberg could help me regarding the benefits and some basic information, in case Dan passes away, and the name of the person I can contact, since I now reside outside of NYC." Messina Decl. Ex. H., ECF No. This request neither identifies the benefits being inquired about nor any specific documents associated with Daniel's employee benefits. As the Second Circuit has held "no . . . penalty may be imposed unless there has been a specific request for the information." *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 135 (2d Cir. 2001). Accordingly, the claim for failure to supply information is dismissed. [4]

## CONCLUSION

For the reasons set forth above, the Entity Defendants' motion for summary judgment is **GRANTED**, the Individual Defendants' partial motion for summary judgment is **GRANTED** and the Plaintiff's motion for partial summary judgment is **DENIED**.

**SO ORDERED.**

**Dated: March 25, 2020**
      **New York, New York**        **ANDREW L. CARTER, JR.**
                                     **United States District Judge**

---

[4] Because both of Plaintiff's ERISA claims are dismissed from this action, and therefore Plaintiff cannot prove "some degree of success on the merits," Plaintiff's sixth cause of action is also dismissed. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).